IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

BOBBY WILLARD                                                    PLAINTIFF

VS.                           CASE NO. 4-06-CV-1629

TWIN CITY PRINTING AND LITHO, INC.                               DEFENDANT

### Memorandum Opinion and Order

Plaintiff Bobby Willard ("Willard") sues Defendant Twin City Printing and Litho, Inc. ("Twin City"), for age discrimination under the Age Discrimination in Employment Act ("ADEA"), disability discrimination under the Americans with Disabilities Act, discrimination under the Arkansas Civil Rights Act of 1993, and health benefits retaliation under ERISA (doc. #1). Twin City has moved for summary judgment (doc. #13). Willard conceded his ADA and Arkansas Civil Rights Act claims. The Court concludes that Willard has presented a genuine issue of material fact as to his ADEA and ERISA claims. Twin City's Motion for Summary Judgment is **GRANTED IN PART AND DENIED IN PART**.

I.  Facts

Twin City employed Willard primarily as a "stripper"[1] for many years.[2] Willard contends he performed other jobs within his department. In the past, the position of stripper was critical for the printing industry. However, in 2002 Twin City purchased

---

[1] A "stripper" is an employee in the formerly used printing technology that would arrange film negatives so it may be plated. After the film is plated, it is imposed on a press so it may be printed. Doc. #15-2, p. 9.

[2] Twin City states it employed Willard for 37 years. Willard states he worked for Twin City for 43 years.

1

and installed a computer-to-plate ("CTP") system. This new technology significantly diminished the need for strippers. Twin City contends the technology that used strippers has been universally phased out in the printing industry. When the CTP system was installed, Twin City employed three strippers: Willard, Donnie George, and Doug Reeves. George and Reeves transferred to different positions at Twin City where they used the CTP system and other computer technology to make printing plates. This made Willard the only stripper, although according to Willard he continued to perform other jobs in the department.

In July 2005, Twin City's management, Bob and Mike Simpson, met with Willard and discussed his role in the company. Willard admits he told Bob and Mike Simpson that he would prefer to remain in his current position rather than transferring. However, Willard contends he was never told that if he did not transfer his employment would be terminated. Willard claims that had he been told his employment would be terminated, he would have accepted a transfer. Instead, Twin City hired Darrell Wilson, a man under thirty years old, to work in Willard's department. Willard argues Wilson effectively replaced him.

In the fall of 2005, Twin City continued to upgrade its equipment by purchasing a digital press and removing other equipment Willard used as a stripper. Willard insists, however, that he continued to perform other jobs in the department sufficient to fill a full-time position. He claims he trained

2

himself on new tasks within the department, while Twin City trained other younger employees.

In December 2005, Willard was diagnosed with prostate cancer and needed surgery. In February 2006, Willard underwent surgery. Seventeen days after the surgery, while Willard was recuperating at home, Twin City fired Willard. Bob Simpson sent a letter to Willard at home. Although Twin City now argues Willard demonstrated a poor attitude at work and a reluctance to transfer to a new position, the termination letter does not reference any disciplinary problems. In fact the letter states, "In no way is this [termination] a reflection on your job performance. Since 1962, you have been a valuable asset to this company. If you desire to pursue another endeavor, we will gladly write you a referral letter." (doc. #21-4).

**II. Discussion**

    **A.  Summary Judgment Standard**

Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is "material" if it might affect the outcome of a case, and a factual dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 248 (1986). The non-movant "must show there is sufficient evidence to support a jury verdict in [his] favor." Nat'l Bank of Commerce v. Dow Chem. Co., 165 F.3d 602,

607 (8th Cir. 1999). The court views the facts and the inferences to be drawn from the facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The Eighth Circuit Court of Appeals has expressed a strong preference against granting summary judgments in employment discrimination cases. "Summary judgments should seldom be used in cases alleging employment discrimination." Johnson v. Minn. Historical Soc'y, 931 F.2d 1239, 1244 (8th Cir. 1991) (citing Haglof v. Nw. Rehabilitation, Inc., 910 F.2d 492, 495 (8th Cir. 1990)). "Summary judgments should be sparingly used and then only in those rare instances where there is no dispute of fact and where there exists only one conclusion." Johnson, 931 F.3d at 1244. "All evidence must point one way and be susceptible of no reasonable inferences sustaining the position of the non-moving party." Id. "Because discrimination cases often depend on inferences rather than on direct evidence, summary judgment should not be granted unless the evidence could not support any reasonable inference for the nonmovant." Crawford v. Runyon, 37 F.3d 1338, 1341 (8th Cir. 1994).

**B.   ADA Claim & Arkansas Civil Rights Act Claims**

In his response to Twin City's motion, Willard conceded that his ADA and Arkansas Civil Rights Act claims should be dismissed. Therefore, Willard's claims based on the ADA and Arkansas Civil Rights Act are **DISMISSED WITH PREJUDICE**.

4

**C.   ADEA Claim**

The ADEA provides that it is unlawful "for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1)(2006).  The ADEA applies to individuals age forty and older.  29 U.S.C.§ 631.

A claim of intentional age discrimination may be provided through direct or circumstantial evidence.  Lee v. Rheem Manufacturing Co., 432 F.3d 849, 853 (8th Cir. 2005). Circumstantial evidence creates the "requisite inference of unlawful discrimination through the familiar three-part analysis of McDonell Douglas Corp. V. Green, 411 U.S. 792, 93 (1973)." Id.  Willard has presented no direct evidence of age discrimination, so his circumstantial evidence must be examined under the McDonell Douglas test.

Under the McDonell Douglas analysis, the plaintiff must first establish a prima facie case of discrimination.  Haas v. Kelly Services, Inc., 409 F.3d 1030, 1035 (8th Cir. 2005).  To establish a prima facie case, a plaintiff must show that (1) he is forty or older; (2) he suffered an adverse employment action; (3) he was meeting his employer's reasonable expectations at the time of the adverse action; and (4) he was replaced by someone substantially younger.  Id.  Once the plaintiff establishes a prima facie case, the defendant must "meet a burden of production" by articulating a legitimate non-discriminatory

5

reason for the adverse employment action.  Id.  Finally, if the defendant fulfills his burden of production, the burden returns to the plaintiff to establish that the defendant's reason is a mere pretext for discrimination.  Id.

   No dispute exists for the first two elements.  Willard was in his early sixties when he was terminated.  In its brief in support of its motion, Twin City primarily argues that Willard was not meeting its reasonable employment expectations and that Willard had a poor attitude about learning to use the new printing technology.  However, the record reveals that in the many years he had worked for Twin City, Willard had a sterling work history.  Willard's alleged poor attitude developed in July 2005 when Willard expressed a preference to stay in the position in which he was currently working.  Expressing this preference does not surprise the Court.  Furthermore, the parties dispute the urgency that was placed on this discussion.  Willard contends that had he known his future employment with Twin City balanced on that conversation, he would have transferred.  However, according to Willard, this urgency was not expressed to him so he did not believe staying in his current position meant he would be terminated.  Finally, Willard's termination letter does not express any disciplinary concerns.  In fact, it is very complimentary and not the letter one would expect for someone who had a poor attitude.  Therefore, Willard has met the second element.

Twin City also argues Willard cannot show the fourth prima facie element because the person who arguably replaced Willard was Doug Reeves, who is only three years younger than Willard, so Willard cannot show he was replaced by someone substantially younger.  However, Twin City hired Darrell Wilson in July 2005. Wilson testified by affidavit that he is under the age of thirty, so he is substantially younger than Willard.  Willard and Wilson testified that Wilson performed the work Willard did when he was terminated.  Although a company may re-delegate duties after an employee is terminated, Twin City hired Wilson after Willard expressed his preference to stay in his current position.  An issue of fact exists whether Twin City hired Wilson to perform Willard's work when Willard was finally terminated.  Therefore, the Court concludes Willard has shown he was replaced by someone substantially younger.

The burden of production now shifts to Twin City to show it had a legitimate nondiscriminatory reason to terminate Willard. Twin City argues that new technology made Willard's position obsolete and that it made the legitimate management decision to terminate the position.  The Court agrees that new technology eliminating the need for a position is a legitimate nondiscriminatory reason.

The burden now shifts back to Willard to show Twin City's reason is pretext for age discrimination.  First, Willard notes Twin City's reason for Willard's termination changed during the briefing on this motion.  Twin City first argues Willard's poor

7

attitude about transferring led to his termination.  However, in its reply brief, Twin City primarily argues its legitimate nondiscriminatory reason: new technology eliminated the need for strippers.  Although Twin City has the right to frame its own arguments, the Court finds this theory switching suspicious.  Furthermore, Willard testified that although he was still a stripper, he was performing many other jobs in the department, showing he adapted to the changing workplace.  Although he expressed reluctance about a transfer, he was not sitting idle at work, he was working on other tasks.  Finally, Willard was a long-time employee with a great work history, as his termination letter reflects.  Terminating someone with the title of stripper who was still working full days in other duties seems suspicious.  Therefore, the Court concludes Willard has shown sufficient pretext and evidence of discrimination to preclude the granting of summary judgment in Twin City's favor.

**D.    ERISA Claim**

ERISA protects employees against retaliation for using health benefits:

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan, .
> . . .

29 U.S.C. § 1140 (2006).

ERISA retaliation claims are analyzed using the same three prong analysis as employment-discrimination cases.  <u>Rath v.</u>

Selection Research, Inc., 978 F.2d 1087, 1089 (8th Cir. 1992). First, the plaintiff must make out a prima facie case of retaliation. Id. To do so the plaintiff must show (1) he engaged in a statutorily protected activity; (2) the employer took an adverse employment action against him; and (3) a causal connection exists between the two. Id. at 1090. The proximity of two events can be sufficient to establish a prima facie case of retaliation, but proximity alone is often insufficient to ultimately prove pretext for the employer's legitimate, nondiscriminatory reason. Arraleh v. County of Ramsey, 461 F.3d 967, 977 (8th Cir. 2006). Once the plaintiff has successfully shown a prima facie case, the burden of production shifts to the defendant to present a legitimate non-discriminatory reason for the adverse employment action. Rath, 978 F.2d at 1089. Once the defendant meets this burden, the burden then shifts back to the plaintiff to show the defendant's stated reason is pretext for retaliation. Id.

  Willard engaged in protected activity by using his insurance benefits for cancer surgery. Twin City took an adverse employment action against him by firing him. The question becomes, are the two causally connected? As Willard notes, the decision that Willard was no longer needed was apparently made in the summer and fall of 2005 when Wilson was hired and the remaining outdated equipment was removed. However, Willard was not terminated until after he was diagnosed with cancer and after he underwent surgery. He could have been fired any time before

9

the surgery.  Furthermore, Willard was fired on February 17, only seventeen days after his surgery.  These two facts present a sufficient causal connection.

Twin City's legitimate nondiscriminatory reason is the same as under the ADEA claim.  However, if this is true, Twin City has not explained why it waited until it knew Willard had health problems before terminating him.  This suggests pretext for retaliation.  Twin City argues that under its insurance plan, Willard's surgery and aftercare would be covered.  However, it has not presented any insurance documentation to support this claim.  Furthermore, Willard was an aging employee.  As far as Twin City knew, more health problems could have been on the horizon.  Terminating Willard cut off coverage for any potential problems even if one assumes the cancer treatments were covered.  Therefore, Willard has shown pretext for retaliation.  Twin City's motion for summary judgment fails.

### III. Conclusion

Willard's ADA and Arkansas Civil Rights Act claims are **DISMISSED WITH PREJUDICE**.  However, Willard has presented sufficient evidence to create a genuine issue of material fact on his ADEA and ERISA claims.  Twin City's motion for Summary Judgment is **GRANTED IN PART AND DENIED IN PART**.

**IT IS SO ORDERED**, dated this 7th day of August, 2007.

*/s/ Rodney S. Webb*
RODNEY S. WEBB, District Judge
United States District Court